**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 5, 2013**

# In the Court of Appeals of Georgia

A12A1987. THOMAS v. THE STATE.

MILLER, Presiding Judge.

Following a jury trial, Jeremiah Frank Thomas was convicted of kidnapping (OCGA § 16-5-40 (a)). Thomas appeals from the denial of his motion for new trial, contending that the evidence was insufficient to sustain his conviction because there was no asportation of the victim. Thomas also contends that the circumstances of the offense, including evidence of his mental illness, established that he did not have the criminal intent to commit the offense. After a thorough review of the record, we conclude that Thomas's movement of the victim was sufficient to establish asportation, and that the jury was authorized to find that he had the requisite criminal intent to commit the offense based on the facts and circumstances of the case. Accordingly, we affirm.

On appeal from a criminal conviction, we view the evidence in a light most favorable to the verdict, and Thomas no longer enjoys a presumption of innocence. See *Bryant v. State*, 304 Ga. App. 755, 755 (1) (697 SE2d 860) (2010). "We do not weigh the evidence or resolve issues of witness credibility, but merely determine whether the evidence was sufficient to find [Thomas] guilty beyond a reasonable doubt." (Citation and punctuation omitted.) Id.

So viewed, the evidence shows that in December 2010, the then six-year old victim was playing with other children in the fenced backyard of her aunt's house. Thomas lived in the same neighborhood as the victim's aunt and was out walking. Thomas went to the fence and began speaking to the victim, whom he did not know. Thomas offered money to the victim, opened the gate, and entered the aunt's backyard. When the victim approached Thomas, he grabbed her, lifted her, carried her out of the backyard, and ran into the back alley. The victim did not want Thomas to pick her up, and she began screaming, biting, and hitting Thomas as he carried her away. Thomas carried the victim past three houses before putting her down. The victim then ran back to her aunt's front yard.

By this time, the other children informed the aunt that the victim had been snatched. The victim's aunt saw Thomas running down the alley and ran after him.

Thomas ran attempted to hide in some bushes, and when the victim's aunt discovered him, he fled down the street. Police officers patrolling the area were alerted to the incident, and they arrested Thomas. Thomas was subsequently charged with and convicted of kidnapping.

1. Thomas contends that the evidence was insufficient to sustain his conviction for kidnapping since there was no asportation. We disagree.

"A person commits the offense of kidnapping when [he] abducts or steals away any person without lawful authority or warrant and holds such person against his will." OCGA § 16-5-40 (a). "For the State to prove the essential element that the defendant has 'stolen away' or 'abducted' his alleged victim, it must show that an unlawful movement, or asportation, of the person has taken place against [the victim's] will." (Citation, footnote, and punctuation omitted.) *Brashier v. State*, 299 Ga. App. 107, 109 (2) (681SE2d 750) (2009). Under the kidnapping statute, "*slight movement* shall be sufficient; provided, however, that any such slight movement of another person which occurs while in the commission of any other offense shall not constitute the offense of kidnapping if such movement is merely incidental to such

3

other offense. " (Emphasis supplied.) OCGA § 16-5-40 (b) (1).[1] "Movement shall not be considered merely incidental to another offense if it: (A) Conceals or isolates the victim; (B) Makes the commission of the other offense substantially easier; (C) Lessens the risk of detection; *or* (D) Is for the purpose of avoiding apprehension." (Emphasis supplied.) OCGA § 16-5-40 (b) (2).

Here, the evidence shows that Thomas picked up the victim and carried her out of her aunt's backyard and into the alley. To the extent Thomas cites to inconsistencies or conflicts in the evidence, "[a] jury is authorized to believe or disbelieve all or any part of the testimony of witnesses, and it serves as the arbiter of

---

[1] In 2008, the Supreme Court of Georgia held that the asportation required to support a conviction for kidnapping must be more than "slight," and set forth a four-part test to aid in the determination of whether the asportation element was met: (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense. *Garza v. State*, 284 Ga. 696, 702 (1) (670 SE2d 73) (2008); see also *Bryant*, supra, 304 Ga. App. at 756-757 (1), n.1. After the *Garza* decision, the legislature amended the kidnapping statute, effective July 1, 2009, to provide that slight movement is sufficient to establish kidnapping as long as the movement was not incidental to another offense. See *Hammond v. State*, 289 Ga. 142, 143 (710 SE2d 124) (2011). The 2009 amendment is applicable here since the incident occurred in December 2010.

4

conflicts in the evidence before it." (Citation and punctuation omitted.) *Bray v. State*, 294 Ga. App. 562, 563 (1) (669 SE2d 509) (2008).

Thomas argues that the movement of the victim did not constitute kidnapping because it occurred during the commission of and was merely incidental to another offense, namely simple battery. While Thomas was not charged with simple battery for grabbing the victim and lifting her against her will,[2] the plain language of OCGA § 16-5-40 (b) (1) does not require that Thomas have been charged with the separate offense. Nevertheless, the circumstances of the case show that the movement of the victim was not merely incidental to the offense of simple battery. Significantly, the movement of the victim took place after Thomas grabbed the victim and lifted her. See *Bryant*, supra, 304 Ga. App. at 757 (1) (holding that under the kidnapping statute existing prior to 2009 amendment, movement of the victim was not incidental to aggravated assault on the victim since the movement occurred after the assault). Additionally, Thomas moved the victim from the aunt's backyard and down the alley, passing at least three houses. Thomas's action concealed and isolated the victim from

---

[2] Evidence that defendant's touching of the victim was nonconsensual and unwelcome, as displayed by victim's traumatic reaction to the touch, was sufficient to establish offense of simple battery. See *Miller v. State*, 230 Ga. App. 73 (495 SE2d 329) (1997).

her aunt and others. See OCGA § 16-5-40 (b) (2) (A); see also *Bryant*, supra, 304 Ga. App. at 757 (1) (the defendant placed the victim in additional danger by isolating the victim from rescue and exercising further control over the victim when the defendant forced the victim from the backyard to inside the house) *Brower v. State*, 298 Ga. App. 699, 707 (2) (680 SE2d 859) (2009) (holding that movement from one part of the building to another was not merely incidental to another offense because such movement enhanced defendant's control over the victims and isolated them from protection or rescue). As a result, the movement of the victim was not merely incidental to any other offense,[3] and the evidence was sufficient sustain to establish asportation since only slight movement is necessary. OCGA § 16-5-40 (b) (1).

2. Thomas also contends that the circumstances of the offense, including evidence of his mental illness, demonstrated his lack of criminal intent to commit the offense. Again, we disagree.

---

[3] OCGA § 16-5-40 (b) (2) is worded in the disjunctive. Therefore, only one statutory factor needs to be satisfied. Cf. *Fair v. State*, 245 Ga. 868, 872 (3) (268 SE2d 316) (1980) (where a criminal statute is worded in the disjunctive, only one disjunctive phrase needs to be satisfied); *Padgett v. City of Moultrie*, 229 Ga. App. 500, 504 (1) (494 SE2d 299) (1998) (a statutory list divided by semicolons and concluding with "or" is disjunctive, and the statute is satisfied if only one item of list is present). Similarly, under the *Garza* test, satisfaction of all four *Garza* factors is not required to establish that asportation has occurred. *Hammond*, supra, 289 Ga. at 144-145.

6

"A person will not be presumed to act with criminal intention but the trier of facts may find such intention upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted." OCGA § 16-2-6. The presence or lack of criminal intent is for the jury to decide based on the facts and circumstances proven at trial. *Harris v. State*, 222 Ga. App. 56, 59 (2) (473 SE2d 229) (1996).

Here, the jury was authorized to find that Thomas had the requisite criminal intent from the circumstances of the case. Significantly, the evidence showed that Thomas approached the victim, who he did not know, while she was playing in her aunt's backyard and offered the victim money. Upon approaching the victim, Thomas grabbed her, lifted her, and carried her away from her aunt's backyard against her will. The evidence shows that upon being picked up, the victim began hitting and biting Thomas and asked that he put her down. After releasing the victim, Thomas attempted to flee from the aunt by running away and hiding in some bushes, and his flight from the scene presents evidence of consciousness of guilt. See *Amaechi v. State*, 306 Ga. App. 333, 336 (1) (702 SE2d 680) (2010). While Thomas refers to testimony, including his own, that purportedly shows a lack of criminal intent, the

7

jury was authorized to reject all or any of this testimony, as it serves as the arbiter of any conflicts in the evidence. See *Bray*, supra, 294 Ga. App. at 563 (1).

Thomas further contends that he lacked the criminal intent to kidnap the victim based on evidence showing that he was suffering from Schizoaffective Disorder and Borderline Intellectual Functioning, and that he had not been taking his medications at the time of the offense.[4] However, Thomas conceded that the evidence did not support a defense of not guilty by reason of insanity, see OCGA § 16-3-2, and "mental abnormality, unless it amounts to insanity, is not a defense to a crime." (Citation and punctuation omitted.) *State v. Abernathy*, 289 Ga. 603, 607-608 (4) (a) (715 SE2d 48) (2011); see also *Wallin v. State*, 285 Ga. App. 377, 383 (b) (646 SE2d 484) (2007) (noting that "a person is not legally insane simply because he suffers from schizophrenia or a psychosis") (citation omitted). There is no medical evidence that Thomas's mental illness prevented him from forming the intent to kidnap. Rather,

---

[4] A forensic psychiatrist testified that Thomas's primary mental health diagnosis was Antisocial Personality Disorder, which did not include symptoms of hallucination or delusions. The psychiatrist also testified that Thomas's secondary mental health diagnosis was Schizoaffective Disorder, which the psychiatrist described as a "combination of some of the symptoms of Schizophrenia," like hallucinations and delusions, along with symptoms of depression and mania. As for Thomas's tertiary diagnosis of Borderline Intellectual Functioning, the psychiatrist stated that Thomas appeared to have a below-average I.Q., but that he was not mentally retarded.

8

the forensic psychiatrist who examined Thomas soon after his arrest testified that Thomas was not exhibiting any symptoms consistent with psychosis at the time. The psychiatrist opined that at the time of the incident, Thomas knew the difference between right and wrong, and that his actions during the offense were purposeful and were not caused by any mental illness. Moreover, Thomas's mental illness, by itself, did not establish his inability to form a criminal intent. See *Freeman v. State*, 132 Ga. App. 742, 744 (1) (209 SE2d 127) (1974); cf. *Anthony v. State*, 317 Ga. App. 807, 811 (2) (732 SE2d 845) (2012) (in light of defendant's failure to raise an insanity defense, evidence of the defendant's mental illness was properly excluded since it was not relevant to the issue of criminal intent). As a result, the jury was authorized to find proof of Thomas's criminal intent based upon the testimony of the psychiatrist, as well as his conduct and other circumstances associated with the offense. See *Fuss v. State*, 271 Ga. 319, 320 (1) (519 SE2d 446) (1999).

*Judgment affirmed. Ray and Branch, JJ., concur.*